UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| LESTER L. LEE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE WILLIAM R. LEE IRREVOCABLE | ) | 4:15-cv-00182-RLY-DML |
| TRUST and DONALD EUGENE LEE | ) | |
| AND ROBERT EARL LEE, as co- | ) | |
| Trustees, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Bankruptcy Case |
| LESTER L. LEE, | ) | 12-90007-JJG-7A |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| THE WILLIAM R. LEE IRREVOCABLE | ) | |
| TRUST and DONALD EUGENE LEE | ) | |
| AND ROBERT EARL LEE, as co- | ) | Adversary Proceeding |
| Trustees, | ) | 13-59056 |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| LESTER L. LEE, | ) | |
| | ) | |
| Defendant. | ) | |

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**

Chapter 7 debtor Lester L. Lee appeals a summary judgment order entered against him by the Honorable Jeffrey Graham of the United States Bankruptcy Court for the

1

Southern District of Indiana. The William R. Lee Irrevocable Trust and its co-Trustees, Donald Eugene Lee and Robert Earl Lee, (collectively, the "Trust") initiated this adversary proceeding against Lester, seeking to hold him personally liable for a $7,522,879.73 judgment entered on December 30, 2008 against Lees Inns of America, Inc. ("LIA"), a dissolved Indiana corporation that Lester presided over, directed, and solely owned. The Bankruptcy Court found in favor of the Trust and pierced the corporate veil. Lester maintains that this was in error. For the reasons set forth below, the court **AFFIRMS** the judgment of the Bankruptcy Court.

## I. Facts[1]

### A. The LIA Merger and the Subsequent Appraisal Proceeding[2]

Lester and the Trust were the shareholders of LIA, which was created in 1974 as a public company to build and operate hotels. (Findings and Conclusions at Finding of Fact ("FF") 1). LIA also had subsidiary companies including Lees Inns Management Corporation, Hospitality Designers and Consultants, Inc., Prime Construction Management, Inc., and State Mortgage Corporation (collectively, the "LIA Subsidiaries"). (*Id.* at FF 3). Lester was president and chairman of the board of directors of LIA. (*Id.* at FF 4).

---

[1] All citations to the record are to materials Lester designated when he filed his Notice of Appeal. (*See* Filing Nos. 5-1 through 5-17). No party compiled an appendix.
[2] A more complete background of Lester's pre-merger conduct, the merger itself, and the appraisal proceeding can be found in *Lees Inns of Am., Inc. v. William R. Lee Irrevocable Tr.*, 924 N.E.2d 143 (Ind. Ct. App. 2010).

2

Lester gained sole ownership of LIA by "merging out" the Trust. (*Id.* at FF 11). On April 4, 2000, Lester, as the majority shareholder of LIA and the sole shareholder of LLL Acquisition, approved a merger of the two entities. (*Id.*). On June 26, 2000, LIA was merged into LLL Acquisition, the Trust's shareholder status ceased, and Lester became the sole shareholder of LIA. (*Id.*). The Trust dissented to the merger, asserted its rights, and demanded payment for the value of its shares, all pursuant to Indiana's Dissenters' Rights Statute, Ind. Code § 23-1-44-1 *et seq.* (*Id.* at FF 12). LIA filed a Petition for Determination of Fair Value, and in September and October 2008, the Jennings Circuit Court held a bench trial. (*Id.* at FF 13).

On December 30, 2008, the Jennings Circuit Court issued its Findings and Conclusions. (*Id.*). The court entered judgment in favor of the Trust and against LIA in the amount of $7,522,879.73. (*Id.* at FF 14). The Indiana Court of Appeals affirmed in March 2010. (*Id.* at FF 15).

### B. Lester's Post-Merger Conduct

After the merger, Lester sought to devalue LIA in order to render the Trust's claims worthless. (*Id.* at Conclusion of Law ("CL") 20). To this end, on November 1, 2000, approximately four months after the merger date, Lester executed a Real Estate Conditional Sales Contract with LIA, pursuant to which he purchased from LIA forty-one acres of real property located in Shelbyville, Indiana for $1.3 million.[3] (*Id.* at FF 21).

---

[3] This price was substantially lower than what had been offered to a third party just one year earlier. On June 7, 1999, LIA entered into an agreement with Horne Properties, Inc., whereby Horne Properties was granted the option to purchase this same property for $1.9 million. (*Id.* at FF 19). Horne Properties never exercised its option to purchase. (*Id.* at FF 20).

3

Lester was not required to make any annual principal payments towards the purchase price for thirty years. (*Id.* at FF 22). Instead, Lester was merely required to make interest only annual payments of $76,577.44. (*Id.*). In addition, Lester could prepay the purchase price without penalty. (*Id.*).

On November 26, 2002, 25.5 acres of the Shelbyville property was sold to Wal-Mart Stores East, L.P. for $1.7 million. (*Id.* at FF 23). Upon consummation of the sale, Lester personally profited approximately $400,000 and still retained 17.5 acres of the Shelbyville property. (*Id.* at FF 24). Lester sold a portion of the remaining real estate to Ritter's of Shelbyville LLC for $395,472. (*Id.* at FF 25).

As of the Merger Date, LIA owned all of the stock in the LIA Subsidiaries. (*Id.* at FF 26). During the pendency of the Dissenters' Rights action, the LIA Subsidiaries were transferred from LIA to the Lee Group Holding Company, LLC, a limited liability company owned by Lester's immediate family but controlled by Lester, for little or no consideration. (*Id.* at FF 27-28, 34, 39).

Just five weeks before the trial began in the Dissenters' Rights action, Lester, the Lee Group, Johnson County Motel Corporation ("JCMC"), and Lees Real Estate Investments, LLC filed a Complaint against LIA in the Jefferson Circuit Court. (*Id.* at FF 29). In addition to serving as LIA's president, Lester was also the president of JCMC, the managing member of the Lee Group, and the managing member of Lees Inns Real Estate Investments. (*Id.* at FF 33-34). He therefore controlled all the parties named in the Complaint. (*Id.* at FF 35). Notably, this suit was filed in Jefferson County, as opposed to the preferred venue, Jennings County. (*Id.* at FF 29).

The Complaint alleged defaults by LIA on notes secured by all of LIA's property (including notes receivable, inventory, equipment, intellectual property, and all general intangibles) and on various leases. (*Id.* at FF 30-31). Lester made no investigation into any possible defenses to the allegations contained in the Complaint. (*Id.* at FF 32). In October 2008, Lester obtained an Amended Agreed Judgment–signed by himself on behalf of every party in that case (i.e., each plaintiff *and* the defendant)–that granted a judgment in favor of the plaintiffs and against LIA for $7,846,686.87. (Amended Agreed Judgment; Findings and Conclusions at FF 36-37). This sum included $3,380,396.14 owing to Lester, $2,121,777.71 owing to the Lee Group, $1,466,153 owing to JCMC, and $878,360 owing to Lees Real Estate Investments. (Findings and Conclusions at FF 37). Contrary to the terms of the Amended Agreed Judgment, on or about August 20, 2008, Lester caused LIA to transfer all of its assets (valued at $7,732,921 in the Amended Agreed Judgment) to just the Lee Group. (*Id.* at FF 39).

On September 2, 2008, Lester, as sole shareholder and president of LIA, voted to dissolve the corporation. (*Id.* at FF 40). He subsequently filed Articles of Dissolution with the Indiana Secretary of State on November 13, 2008. (*Id.*). Thus, LIA ceased its legal existence on that date. (*Id.*).

The Amended Agreed Judgment, the LIA Subsidiaries transfer, and the transfer of the Shelbyville property were each unknown and not disclosed to the Trust until discovery during proceedings supplemental in March 2009 through April 2009. (*Id.* at FF 41).

**II. Procedural History**

On January 3, 2012, Lester filed his voluntary petition under Chapter 7 of the United States Bankruptcy Code. In August 2013, the Trust initiated this adversarial proceeding to pierce the corporate veil and hold Lester personally liable for the Jennings Circuit Court judgment. The Trust ultimately moved for summary judgment, arguing that Lester's pre-merger and post-merger conduct each warranted veil piercing. The Bankruptcy Court granted summary judgment in favor of the Trust in December 2015. The court held that the exclusivity provision of Indiana's Dissenters' Rights Statute barred the Trust from piercing the corporate veil based on Lester's pre-merger conduct. However, the court went on to hold that Lester's post-merger conduct satisfied the veil piercing criteria established by Indiana law. Thus, the Bankruptcy Court held Lester personally liable for the balance due on the Jennings Circuit Court judgment. This appeal ensued.

**III. Questions Presented and Standard of Review**

Lester presents three issues[4] on appeal, which the court restates as follows:

1. Did the Bankruptcy Court err in holding that a minority shareholder who obtained a money judgment in an appraisal proceeding after dissenting to a merger can

---

[4] The Trust adds a fourth question concerning estoppel in its Statement of the Issues. While Lester does mention estoppel in his opening brief, he does not set it off as a separate issue. More importantly though, his discussion of this equitable doctrine is limited to one short paragraph that lacks a single citation to case law or a recitation of the relevant standard. To the extent Lester intended to raise this issue, it is waived. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

6

subsequently pierce the corporate veil, in a different proceeding, based upon post-merger conduct in order to collect the appraisal judgment from the majority shareholder individually?

2. Did the Bankruptcy Court err in holding that a creditor's status as a former minority shareholder does not preclude it from piercing the corporate veil?

3. Did the Bankruptcy Court err in determining that a claim to pierce the corporate veil can be resolved at summary judgment?

These issues are either pure questions of law or mixed questions of law and fact, both of which are reviewed de novo. *Zeddun v. Griswold (In re Wierzbicki)*, 830 F.3d 683, 687 (7th Cir. 2016).

**IV. Discussion**

"For over a century, a fundamental principle of both American corporate law and Indiana common law has been that corporate shareholders sustain liability for corporate acts only to the extent of their investment and are not held personally liable for acts attributable to the corporation." *Country Contrs., Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 687 (Ind. Ct. App. 2014). A court may disregard the corporate identity and impose individual shareholder liability upon a determination to pierce the corporate veil. *CBR Event Decorators, Inc. v. Gates*, 4 N.E.3d 1210, 1215 (Ind. Ct. App. 2014). This equitable doctrine applies when "it is clear that the corporation is merely a shell for conducting the defendant's own business and where the misuse of the corporate form constitutes a fraud or promotes injustice." *Commissioner v. RLG, Inc.*, 755 N.E.2d 556, 563 (Ind. 2001). Indiana courts are "reluctant" to grant this

relief, *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1232 (Ind. 1994), and will do so only after "careful review" of the relevant factors, including undercapitalization of the corporation and the absence of corporate records. *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. 2012) (outlining the non-exhaustive list of eight factors) (citing *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994)).

Lester does not mount a traditional challenge to the Bankruptcy Court's holding that the Trust was entitled to pierce the corporate veil. In other words, he does not engage in a meaningful discussion of the factors and show how the evidence was collectively insufficient to support them. Instead, he lodges three narrow legal challenges to the Bankruptcy Court's judgment. The court examines the issues in order, and, finding no error, affirms the Bankruptcy Court.

### A. The "Exclusivity Provision" of Indiana's Dissenters' Rights Statute

First, Lester avers that piercing the corporate veil in this case circumvents the "exclusivity provision" of the Dissenters' Rights Statute. The Dissenters' Rights Statute provides a procedure whereby a shareholder who objects to, *inter alia*, a proposed merger, asset sale, or share exchange may compel the corporation to purchase his shares so that he may exit the corporation. If the shareholder and the corporation fail to agree on a price to be paid for those shares, a court may determine the value in an appraisal proceeding. A minority shareholder who is being "merged out," like the Trust in this case, may also avail itself of the appraisal process. The Dissenters' Rights Statute has an exclusivity provision, and the version of that provision in effect at the time of the LIA merger provides, "A shareholder . . . who is entitled to dissent and obtain payment for the

8

shareholder's shares under this chapter . . . may not challenge the corporate action creating . . . the shareholder's entitlement." Ind. Code § 23-1-44-8(c). According to Lester, this means that obtaining a judgment in an appraisal proceeding is the *only* remedy available to shareholders challenging a proposed merger. Permitting the Trust to pierce the corporate veil in this case therefore cannot permitted, or so he claims.

In support of his position, Lester relies heavily upon the Indiana Supreme Court's decision in *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051 (Ind. 1997). In *Fleming*, a minority shareholder objected to an asset sale and sought payment for the fair value of his shares pursuant to the Dissenters' Rights Statute. *Id.* at 1052. In addition, he demanded compensatory and punitive damages from the majority shareholder, the corporation, and other defendants for breach of fiduciary duty and fraud. *Id.* The trial court granted summary judgment for Defendants on the breach of fiduciary duty and fraud claims, and the Indiana Supreme Court affirmed, holding, "[I]in a merger or asset sale, the exclusive remedy available to a shareholder seeking payment for the value of the shareholder's shares is the statutory appraisal procedure." *Id.* at 1056.

In reaching its decision, the *Fleming* court discussed the history of Indiana corporate law. In an earlier case, the court had determined that the appraisal procedure was the sole remedy for minority shareholders dissenting from a merger *only* if that merger had a "valid purpose." *Gabhart v. Gabhart*, 370 N.E.2d 345, 356 (Ind. 1977). If the proposed merger did not have a valid purpose, minority shareholders were not limited to judicial appraisal. Rather, they could move to enjoin the merger. *Id.*

The General Assembly expressly rejected the *Gabhart* court's analysis, and adopted the Revised Model Business Corporation Act ("RMA"), with some modifications, in response. The *Fleming* court reviewed the official comments to Section 8(c) and noted, "We believe the legislature clearly and unambiguously made the determination that separate actions would not lie for breach of fiduciary duty and fraud when it rejected the language of RMA § 13.02(b) and used instead the language of Ind. Code § 23-1-44-8(c)." *Fleming*, 676 N.E.2d at 1056-57. Importantly though, the court concluded that a dissenting shareholder may "allege that the value assigned to the shares in the merger or asset sale was too low because of the breach of fiduciary duty or fraud on the part of majority shareholders" within the appraisal proceeding. *Id.* at 1057. Therefore, only independent claims for breach of fiduciary duty or fraud are prohibited. The court acknowledged that "the appraisal remedy does not provide for the individual liability of majority shareholders or the recovery of punitive damages," but concluded that this was a policy choice made by the legislature. *Id.* at 1058.

The Bankruptcy Court held that while *Fleming* barred the Trust from piercing the corporate veil based upon Lester's pre-merger conduct, the Trust was entitled to pierce based upon his post-merger conduct. No party challenges the initial conclusion, but Lester maintains that the latter was erroneous. This appeal presents an issue of first impression[5], but no party requested that the court certify this question to the Indiana

---

[5] The Trust claims that this court "recognized that a post-merger direct action is not precluded by the Indiana Dissenters' Rights Statute" in *Am. Union Ins. Co. v. Meridian Ins. Grp., Inc.*, 137 F. Supp. 2d 1096 (S.D. Ind. 2001) (Hamilton, J.). (Filing No. 10 at 15-16). But the *American Union* court was presented with a different issue than what this court faces: "The central

Supreme Court. The court's task is therefore to predict how the Indiana Supreme Court would decide this case. *See Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016)

The court holds that the Trust may pierce the corporate veil based upon Lester's post-merger conduct. Put another way, a minority shareholder who obtained a money judgment in an appraisal proceeding after dissenting to a merger can subsequently pierce the corporate veil based upon post-merger conduct in order to collect the appraisal judgment from the majority shareholder individually. The court reaches this conclusion based upon (1) the plain language of Ind. Code § 23-1-44-8(c), (2) Indiana case law, and (3) public policy concerns.

First, nothing in the plain language of the exclusivity provision prevents the Trust from pursuing this remedy. *See* Ind. Code § 23-1-44-8(c) ("A shareholder . . . who is entitled to dissent and obtain payment for the shareholder's shares under this chapter . . . may not challenge the corporate action creating . . . the shareholder's entitlement."). The

---

questions in this case are whether and how a dissenting shareholder of a publicly held Indiana corporation may seek relief from directors' alleged breaches of fiduciary duties in agreeing to a merger that will end the dissenter's ownership interest in the corporation." *Id.* at 1097. As that statement of the issues makes clear, the corporation in that case was publicly held (i.e., not private, like LIA). The Dissenters' Rights Statute contains an exception for publicly traded stock, meaning that the minority shareholder in *American Union* was "not able to obtain a judicial appraisal of the value of his share of MIGI pursuant to the dissenters' rights chapter." *Id.* at 1101. Because that remedy was unavailable, the court had to determine "whether and how Indiana law would provide shareholders or the corporation any remedy for the directors' assumed breach of their duty of loyalty and due care to the corporation and to its shareholders when approving a cash-out merger for a publicly traded corporation." *Id.* at 1103. *See id.* at 1102 ("If not for the exception in Section 8(b) for publicly traded companies, this would be a simple case."). The court ultimately found that "a post-merger direct action by an individual shareholder for monetary relief" is "the approach the Supreme Court of Indiana is most likely to adopt if confronted with" that same issue. *Id.* at 1112.

11

Trust is not challenging the merger itself in any way–i.e., it does not seek an injunction to prevent the merger or to undo it. *See American Union*, 137 F. Supp. 2d at 1107 (noting that the "clear purpose of Section 8(c)" was "to prevent court battles over whether to enjoin or undo major corporate transactions like mergers"). That would not even be possible, as the merger was consummated nearly twenty years ago and LIA was dissolved nearly ten years ago. Additionally, nothing in the official comments to Section 8(c) suggests that the General Assembly intended to prevent this type of relief. At bottom, the "basic goal" of this provision was to "prevent injunctions but provide a monetary remedy." *Id.* at 1113. The Bankruptcy Court's judgment accomplishes that purpose.

Second, *Fleming* is not dispositive here. Lester emphasizes that the *Fleming* court expressly determined that (a) a dissenting shareholder is limited to the statutory appraisal procedure, and (b) individual liability of majority shareholders is not permitted within that appraisal process. While this is true, the substantial differences in facts render those general rules inapplicable here. The dissenting shareholder in *Fleming* brought distinct claims for fraud and breach of fiduciary duty against the majority shareholder and the corporation within the appraisal proceeding based upon pre-merger conduct that allegedly devalued his shares. He sought both compensatory and punitive damages, meaning that he wanted compensation *beyond* just the fair value of his shares. Not so here. In this case, the Trust has not advanced any independent legal claims, and it is only seeking the fair value of its shares. In other words, it is not seeking any additional relief. *See id.* at 1102 ("Section 8(c) bars any request for *additional* relief, including injunctive relief . . . .") (emphasis added); *Trietsch v. Circle Design Grp., Inc.*, 868 N.E.2d 812, 818 (Ind. Ct.

App. 2007) ("[A] dissenting shareholder is limited to his dissenting shareholder rights and generally may not recover *other damages*.") (emphasis added). Moreover, the Trust is attempting to pierce the corporate veil based upon the majority shareholder's post-merger conduct that rendered the appraisal judgment worthless. *Fleming* did not contemplate these facts.

The *Fleming* court recognized that the Dissenters' Rights Statute "has a built-in mechanism which prevents the majority from enjoying the fruits of wrongful conduct, for the dissenter receives his equity based on the full value of his stock *before* any allegedly wrongful conduct occurred." 676 N.E.2d at 1058 (emphasis original). Here, the Trust never received the full value of its equity.[6] Lester sold or transferred all of LIA's assets and then dissolved the corporation. But for the Amended Agreed Judgment, the LIA Subsidiaries transfer, and the Shelbyville property transfer, LIA had millions of dollars in assets, enough to satisfy most, if not all, of the Trust's judgment. Lee's post-merger conduct rendered the judgment worthless as against LIA. Unless it can hold Lester personally liable, the Trust has no remedy. *See Gabhart*, 370 N.E.2d at 358 (concluding that "no wrong should be without a remedy").

The court's holding also finds support in the Indiana Supreme Court's subsequent decision in *Galligan v. Galligan*, 741 N.E.2d 1217 (Ind. 2001). In that case, the majority shareholder, who also served as the corporation's sole director, failed to follow the procedure set forth in the Dissenters' Rights Statute after the minority shareholders

---

[6] As of April 2015, only $7,500 of the judgment had been paid by LIA. (Findings and Conclusions at FF 45).

13

objected to an asset sale. *Id.* at 1219-20. The issue was what claim, if any, the minority shareholders could bring against the director based on his non-compliance with the statute. The court held that the minority shareholders were limited "to their dissenting shareholder rights as to the underlying transaction," but could also "proceed with a separate claim against the persons responsible for a breach of statutory duty with respect to the dissenters' rights proceeding." *Id.* at 1125. The *Galligan* court summarized, "[D]issenters' rights are the exclusive remedy afforded for actions or omissions in a merger or asset sale, but failure to afford the dissenters' rights remedy is an independent wrong that is not itself subject to the dissenters' rights provisions." *Id.* at 1125-26. This language suggests that the Dissenters' Rights Statute allows a dissenting shareholder to pierce the corporate veil based on post-merger conduct. As the court noted, the appraisal process is only the exclusive remedy for claims arising out of "actions or omissions in a merger." *Id.* Lester's actions or omissions in the LIA merger played no part in the Bankruptcy Court's analysis.

Lastly, public policy requires that the Trust be permitted to pierce LIA's corporate veil. Adopting Lester's reading of the exclusivity provision and *Fleming* would set a dangerous legal precedent. It would allow any majority shareholder to "merge out" a minority shareholder and then hinder subsequent financial remuneration under the Dissenters' Rights Statute by fleecing the assets of the company with impunity. This cannot be permitted.

Accordingly, the court finds no error on this issue.

14

## B. Imposing Individual Liability to Protect Third Parties

Second, Lester contends that courts only pierce the corporate veil when "it is necessary to prevent fraud or unfairness to *third parties*." *Konrad Motor & Welder Serv. v. Magnetech Indus. Servs.*, 973 N.E.2d 1158, 1163 (Ind. Ct. App. 2012) (emphasis added). According to Lester, the Bankruptcy Court erred by extending the scope of this equitable doctrine beyond the protection of third parties. He maintains that the Trust is not a third party to LIA, at least not in the usual sense, because it is a former minority shareholder. Put another way, the Trust was *part of* the corporation for many years. Additionally, the judgment that the Trust is attempting to collect was obtained by virtue of its position as a minority shareholder. This unique status allegedly bars the Trust from piercing the corporate veil.

The Trust argues that Lester waived this argument by not raising it in his summary judgment briefs. *See Reeves v. Davis (In re Davis)*, 638 F.3d 549, 555 (7th Cir. 2011) (concluding that issues not raised in the bankruptcy court are waived at the district court level). Lester disagrees, but even assuming the argument has not been waived, it has no merit. The fact that the Trust was formerly a shareholder of LIA is immaterial. The Bankruptcy Court pierced LIA's corporate veil based upon Lester's post-merger conduct. The Trust did not have shareholder status once the merger was consummated. Thus, at the time of the Bankruptcy Court's judgment, the Trust was just an ordinary judgment creditor of LIA. It is well established that creditors are permitted to pierce the corporate veil under Indiana law. *See e.g., Konrad Motor*, 973 N.E.2d at 1162-65.

Accordingly, the court finds no error on this issue.

### C. Resolving a Petition to Pierce the Corporate Veil at Summary Judgment

Lastly, Lester contends that Bankruptcy Court should not have disposed of the Trust's claim to pierce the corporate veil at summary judgment because this equitable doctrine requires a highly fact-intensive inquiry. *See Meridian N. Invs. LP v. Sondhi*, 26 N.E.3d 1000, 1005 (Ind. Ct. App. 2015) ("[B]ecause it is a highly fact-sensitive inquiry, piercing of the corporate veil should occur on summary judgment only in extraordinary circumstances.") (quotation marks omitted); 1 William Meade Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.95 at 700 (Perm. ed. 1999) ("[I]t is recognized that the determination of whether there are sufficient grounds for piercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially if fraud is alleged.") (*quoted in Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 565 (Ind. Ct. App. 2002)). Lester maintains that there is "an absence of cases where Indiana courts have pierced the corporate veil on summary judgment." (Filing No. 7 at 19).

The Trust does not contest this general rule. Instead, it argues that this was an unusual case where summary judgment was warranted because the material facts are undisputed. Lester did not designate any evidence that created a genuine issue of material fact or include a "Statement of Material Facts in Dispute" in his response brief, as required by Local Rule 56-1(b). Accordingly, the Bankruptcy Court was entitled to assume that Lester had conceded the Trust's version of the facts. S.D. Ind. L.R. 56-1(f). *See Konrad Motor*, 973 N.E.2d at 1167 (Crone, J., concurring in part and dissenting in part) ("Although piercing the corporate veil is, and should be, a rare occurrence on

summary judgment . . ., I believe that it is appropriate when the relevant facts are undisputed and lead to only a single reasonable conclusion.").

Lester retorts that even if a trial court is presented with stipulated facts, it cannot enter summary judgment when those facts give rise to conflicting inferences. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("[A court's] job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts."). That was the case here, or so he claims. Lester provides three specific examples of this. First, it is undisputed that he purchased the Shelbyville property after the merger for less than the amount set forth in a pre-merger option to purchase with Horne Properties. A reasonable inference could be drawn that the Shelbyville property had lost value. Second, it is undisputed that the LIA Subsidiaries were transferred to the Lee Group. A reasonable inference could be drawn that, at the time of the transfer, the subsidiaries had no value. Third, it is undisputed that LIA's assets were transferred to the Lee Group as part of the Amended Agreed Judgment. A reasonable inference could be drawn that, at the time of the transfer, the assets had no value.

These so-called "reasonable inferences" represent nothing more than baseless speculation, and that is not enough to stave off summary judgment. *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Moreover, Lester ignores that at least two of his three "reasonable inferences" are contradicted by the evidence. It would not be reasonable to infer that the value of the Shelbyville

property decreased from $1.9 million in June 1999 to $1.3 million in November 2000 because Lester sold just over half of the land in November 2002 for $1.7 million. This sale to Walmart suggests that the land was significantly appreciating in value. While it is theoretically possible that the property temporarily depreciated and then dramatically increased in value, that is not a reasonable inference based on the evidence. Similarly, it is not reasonable to infer that LIA's assets were worthless at the time of the transfer (August 2008) because the Amended Agreed Judgment (issued in October 2008) valued them at $7,732,921.

Accordingly, the court finds no error on this issue.

## V. Conclusion

The judgment of the United States Bankruptcy Court for the Southern District of Indiana is **AFFIRMED**.

**SO ORDERED** this 17th day of February 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.